**LYNCH CARPENTER, LLP**
(Eddie) Jae K. Kim (SBN: 236805)
ekim@lcllp.com
Tiffine E. Malamphy (SBN 312239)
tiffine@lcllp.com
117 E Colorado Blvd, Ste 600
Pasadena, CA 91105-3712
Tel.: (213) 723-0707
Fax: (858) 313-1850

*Attorneys for Plaintiff*
*and Proposed Class Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIMBERLY JOHNSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No.: 5:25-cv-08100-EJD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: March 19, 2026<br>Time: 9:00 a.m.<br>Dept.: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila<br><br>Date Filed: September 24, 2025<br>Trial Date: None Set |

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

III. LEGAL STANDARD ..... 2

IV. ARGUMENT ..... 2

A. Plaintiff Sufficiently Alleged Defendant's Intent at this Stage. ..... 2

B. Plaintiff Did Not Consent to Defendant's Collection of Her PHI. ..... 5

C. Plaintiff Adequately Pled Her Federal Wiretap Act Claim. ..... 7

1. The application of the one-party consent rule is a question of fact. ..... 7

2. Plaintiff pled each element of her Federal Wiretap Act claim. ..... 8

D. Plaintiff Adequately Pled Her Claim for Intrusion Upon Seclusion. ..... 10

1. Plaintiff had a reasonable expectation of privacy. ..... 10

2. Plaintiff sufficiently alleged Defendant's conduct is highly offensive. ..... 12

V. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*9201 San Leandro LLC v. Precision Castparts Corp.*,
548 F. Supp. 2d 732 (N.D. Cal. 2008) .......... 2

*B.K. v. Desert Care Network*,
No. 2:23-CV-05021 SPG (PDX), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 12

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 7

*Campos v. Town of Pahrump*,
274 F. Supp. 3d 1106 (D. Nev. 2017) .......... 10

*Conley v. Gibson*,
355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) .......... 2

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 9

*D'Angelo v. Penny OpCo, LLC*,
No. 3:23-cv-00981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 9

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 8

*Doe I v. Google LLC*,
No. 3:23-cv-02431-VC, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) .......... 12

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 6

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 3, 6, 8

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .......... 12

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 8, 9, 11

*Doe v. United States*,
58 F.3d 494 (9th Cir. 1995) .......... 2

*Exam'r v. Las Vegas, Rev.-J.*,
136 Nev. 44, 458 P.3d 1048 (2020) .......... 11

*Fla. v. Jardines*,
569 U.S. 1, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013) .......... 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 13

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

**Cases (cont.)**

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021) .......... 2

*In re Google Location History Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 13

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) .......... 10

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 9, 10

*Iorio v. Check City P'ship, LLC*,
No. 64180, 2015 WL 3489309 (Nev. May 29, 2015) .......... 10

*L.B. v. LinkedIn Corp.*,
No. 5:24-CV-06832-EJD, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... passim

*Lopez v. Cnty.*,
No. 2:16-CV-0218-APG-GWF, 2016 WL 7391036 (D. Nev. Dec. 20, 2016) .......... 11

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 2

*M.G. v. Therapymatch, Inc.*,
No. 3:23-cv-04422-AMO, 2024 WL 4219992 (N.D. Cal. Sep. 16, 2024) .......... 9

*M & R Inv. Co. v. Mandarino*,
103 Nev. 711, 748 P.2d 488 (1987) .......... 10, 11

*Mitchell v. Sonesta Int'l Hotels Corp.*,
No. 2:24-cv-2603-GW-SSC, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) .......... 9

*Newtok Vill. v. Patrick*,
21 F.4th 608 (9th Cir. 2021) .......... 4

*PETA v. Bobby Bersoni, Ltd.*,
111 Nev. 615 (1995) .......... 11, 12

*Roe v. Amgen Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 8

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 4:24-cv-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 9

*United States v. Chemical Found.*,
272 U.S. 1 (1926) .......... 4

*United States v. Heckenkamp*,
482 F.3d 1142 (9th Cir. 2007) .......... 11

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

**Cases (cont.)**

*Webb v. Smart Document Sols., LLC*,
499 F.3d 1078 (9th Cir. 2007) ........................................ 11

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025)........................................ 9

**Statutes**

18 U.S.C. § 2511(2)(d)........................................ 7

18 U.S.C.A. § 2510(8) (West) ........................................ 9

Cal. Penal Code § 631(a) ........................................ 8, 9

## I. INTRODUCTION

Defendant LinkedIn Corporation ("LinkedIn" or "Defendant") is the world's largest internet-based professional network, and its largest revenue generator is selling its Insight Tag, a pixel that functions as a surveillance tool to record users' behavior on websites. The Insight Tag is an under-the-hood tracker that is not visible to website users and not easily understood by users or website operators alike. In fact, over the past five years, there has been an explosion of investigations, articles and class action lawsuits regarding the various pixel owners—the largest and most sophisticated internet companies in the world, including Meta, Google and LinkedIn—having intercepted the sensitive and private information of website users. These tech companies essentially built a device to vacuum up all available internet communications without any filters to safeguard users' personal health and financial data and monetize the data from the Insight Tag through targeted advertising. This case involves LinkedIn's systemic failure to implement any processes to prevent the unlawful interception of the most sensitive of such information—users' medication and dosage information that was prompted by and submitted to the Nevada Heath Link website for the purposes of procuring health insurance.

A review of Plaintiff's allegations demonstrates that she has sufficiently alleged that Defendant invaded her privacy and intentionally intercepted her electronic communications with Nevada Health Link. Accordingly, the Court should deny Defendant's motion to dismiss in its entirety.

## II. STATEMENT OF FACTS

Plaintiff asserts two claims in her Complaint, violation of the Electronic Communication Protection Act (aka the Federal Wiretap Act) and intrusion upon seclusion, based on Defendant's improper interception of her communications with Nevada Health Link's website involving her medication and dosage information via the Insight Tag. *See generally*, Dkt. No. 1. Specifically, Plaintiff alleged that Defendant designed the Insight Tag to collect any and all information communicated to a website operator by duplicating the communication at the source. *See id.*, at ¶¶ 28-29, 32, 39. Defendant monetizes the data collected by the Insight Tag, including medical information, to deliver targeted ads to Plaintiff and others. *See id.*, at ¶¶ 8-10. Plaintiff did not know that the Insight Tag was embedded on Nevada Health Link's website and did not consent to Defendant intercepting her medication and dosage information. *Id.*, at ¶¶ 51-58.

## III. LEGAL STANDARD

"A motion to dismiss […] may only be granted if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *9201 San Leandro LLC v. Precision Castparts Corp.*, 548 F. Supp. 2d 732, 734 (N.D. Cal. 2008) quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A plaintiff's factual allegations must be accepted as true and reasonable inferences from the allegations should be drawn in their favor. *See In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 955 (N.D. Cal. 2021). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## IV. ARGUMENT

### A. Plaintiff Sufficiently Alleged Defendant's Intent at this Stage.

There is no reason for this Court to depart from its decision in *L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832-EJD, 2025 WL 2899514, at *13 (N.D. Cal. Oct. 10, 2025) with respect to the sufficiency of Plaintiff's allegations against LinkedIn regarding the intent element of the state and federal privacy laws.

Here, Plaintiff alleged that Defendant intentionally intercepted Plaintiff's and Class Members' communications consisting of their private data, including personal health information ("PHI"). Dkt. No. 1, at ¶¶ 103, 111. Additionally, Plaintiff alleged that Defendant's Insight Tag was programmed to automatically duplicate, in transit, Plaintiff's communications with Nevada Health Link before the communications reached them. *Id.*, at ¶¶ 28-29; *see also id.*, at ¶¶ 4, 35. Plaintiff alleged that Defendant designed the Insight Tag to collect all interactions with the Nevada Health Link website. *Id.*, at ¶ 39. Furthermore, the issue of health information being shared via tracking technology is so well known in the technology industry that Defendant should have known its Insight Tag was likely collecting PHI. *See id.*, at ¶¶ 40-43. Finally, Plaintiff alleged that Defendant monetized the intercepted PHI in the form of targeted advertising, which is most of Defendant's revenue. *Id.*, at ¶ 9.

In sum, Plaintiff alleged that Defendant intentionally intercepted Plaintiff's communications with Nevada Health Link thereby invading her privacy so that Defendant could profit. Based on the

foregoing allegations, the Court can infer "that the purpose of the Insight Tag is for LinkedIn to collect confidential data from users in violation of their privacy rights." *L.B.*, 2025 WL 2899514, at *13.

In its Motion, Defendant largely repeats the same arguments that this Court rejected in *L.B.*—that LinkedIn's Ad Agreement prohibits advertisers from transmitting PHI to LinkedIn via the Insight Tag and prohibits installing the Insight Tag on a page that collects medical information. Dkt. No. 29, at 10, *compare L.B.*, 2025 WL 2899514, at *12. Just like in *L.B.*, Defendant's Ad Agreement is not "entirely dispositive of its intent at the pleadings stage" in light of Plaintiff's allegations. *L.B.*, 2025 WL 2899514, at *13. In support of this ruling, this Court relied on the majority of district court opinions on this issue, including Judge Orrick's opinion in a similar case involving Meta's pixel, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023), wherein Judge Orrick found that intent had been adequately alleged, because "[w]hat Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record." *L.B.*, 2025 WL 2899514, at *12. This Court found that this same reasoning applied with respect to LinkedIn, as it should once again, here.

Defendant attempts to differentiate this case from the prior LinkedIn cases before this Court by referencing *The Markup* article to argue that Nevada Health Link "had the sole prerogative to choose which webpages bear the Insight Tag and thus control what data is then transmitted through the Insight Tag". Dkt. No. 29, at 10. But this is a repackaging of the same argument discussed just above that this Court has already rejected. Further, Nevada Health Link contracted creation of the website to KPS 3, Inc.; therefore, it is questionable if Nevada Health Link had any prerogative to include the Insight Tag on the website. *See* David McGrath Schwartz, *State approves $6 million contract to publicize health insurance exchange*, LAS VEGAS SUN (Jan. 8, 2013), https://lasvegassun.com/news/2013/jan/08/state-approves-6-million-contract-publicize-health/. To the extent Defendant relies on *The Markup* article for its arguments, it should be noted that that article also mentions that "organizations that have these massive tech stacks that rely on third party-resources don't have a full understanding of what the configuration is, what the data flows are, and then once they go to somebody, what that data is being used for […] it's something that needs to be addressed." *See* Dkt. No. 31-23. This only further supports the application of Judge

Orrick's reasoning to this case—that a record of LinkedIn's technological implementation of its stated policies must be factually developed before LinkedIn's intent can be determined.

Defendant then asserts that it is entitled to the presumption of regularity such that it could not intend for its Insight Tag to collect PHI. Dkt. No. 29, at 11. However, as Defendant notes, the doctrine of the presumption of regularity only applies to government actions, and not private actions. *See United States v. Chemical Found.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). Here, Plaintiff's lawsuit is against LinkedIn, a private company, and not the Nevada government, and therefore, LinkedIn's conduct, decisions, processes, and intent in failing to properly implement measures to lawfully execute its Insight Tag program does not warrant the presumption of regularity.

Defendant's second new tortured argument is claiming that Plaintiff's allegations trigger the heightened pleading standards of Rule 9(b) by supposedly alleging that LinkedIn committed fraud in its Ad Agreement with the government of Nevada. However, this lawsuit does not involve the state of Nevada suing LinkedIn for fraudulent representations made in LinkedIn's Ad Agreement. Instead, this lawsuit involves a consumer's claim against LinkedIn for invasion of privacy and does not include any claims of fraud or misrepresentations against LinkedIn regarding statements it made in its Ad Agreement with Nevada, nor any allegation that Plaintiff ever even saw such statements. Defendant is basically attempting to rewrite Plaintiff's Complaint to trigger a heightened pleading standard, but Plaintiff controls the Complaint not Defendant. *See Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021) ("A plaintiff is the master of his complaint"). As this Court has already held, "without allegations of fraud in Plaintiffs' complaints, the Court need not reach this issue [of the triggering of the heightened pleading requirements] for purposes of this Order." *L.B.*, 2025 WL 2899514, at *13 n10.[1] The Court should not consider this argument as Plaintiff does not have fraud allegations in her Complaint.

Therefore, Plaintiff sufficiently alleged Defendant's intent to intercept, collect, and use her electronic communications and intrude upon her seclusion.

[1] Defendant fails to distinguish this case from *L.B.* on the basis that the pleadings here mention the Ad Agreement, through which Defendant attempts to assert that the Court may consider the Ad Agreement's supposed disclaiming of its intent (Dkt. No. 29 at 11), as the Court actually considered and rejected that same argument in *L.B.*, 2025 WL 2899514, at *13 n10.

**B. Plaintiff Did Not Consent to Defendant's Collection of Her PHI.**

Throughout her Complaint, Plaintiff reiterates that she did not consent to Defendant's interception of her electronic communications. *See* Dkt. No. 1, at ¶¶ 48, 57, 112. In fact, the allegations supporting lack of consent in this case are far stronger than the type of allegations set forth in the prior LinkedIn cases in which this Court has already ruled LinkedIn's disclosures were insufficient to show customers consented to LinkedIn's conduct in the four cases involved in *L.B.*, 2025 WL 2899514, at *5-7. Previously, this Court held that while LinkedIn's terms sufficiently disclosed that LinkedIn may track some data from third-party websites, the Court could not rule as a matter of law that it sufficiently disclosed that it would track the type of personal information at issue in those cases. Specifically, this Court found that "while some of this information—*i.e.,* name, age, date of birth, weight loss goals—may not be considered medical or private in isolation, the combination of these details and the fact that they were provided in the context of seeking medical services could place the data outside users' reasonable expectations of what LinkedIn collects." *Id.* at *7.

Meanwhile, in the case at hand, the allegations regarding the information tracked by LinkedIn are nowhere near the grey area—Plaintiff alleged that she communicated her medication and dosage information to Nevada Health Link, *i.e.*, her PHI, while shopping for health insurance on Nevada Health Link's website and that Defendant intentionally intercepted her PHI. *See* Dkt. No. 1, at ¶¶ 12, 33. Therefore, it is astounding that Defendant argues that Plaintiff consented to its collection of her "generic website interaction data" because Defendant's disclosures and Nevada Health Link's disclosures state that such information may be collected. Dkt. No. 29, at 12-15. Medication and dosage information is plainly not "generic website interaction data", and nothing in LinkedIn's terms with Plaintiff discloses that it would intercept and track such information.

Defendant also argues equally meritless technicalities. First, it argues that Plaintiff failed to allege that she used the Nevada Health Link website during the time when it allegedly had the Insight Tag embedded. Defendant refutes its own argument by admitting that Plaintiff alleged that she used the website in 2024, during which nearly the entirety of that year the website utilized the Insight Tag. Dkt. No. 29, at 13. It then argues that Plaintiff failed to allege exactly which medication and dosage amount (which Plaintiff left out of her pleading because she is entitled to not publicly disclose her personal

medical information) while acknowledging that Plaintiff *did* allege that she responded to the website's questionnaire regarding her medications and dosage for the purpose of obtaining medical insurance. *Id.* The district court in *Doe v. FullStory, Inc.*, held such allegations were sufficient:

> Here, however, Plaintiff provides the information that was missing in the other case. She alleges that she provided her information to Favor *in connection with obtaining* prescriptions for birth control, emergency contraceptives, and condoms. She *identifies the types of questions she answered* on the Favor platform to secure those services. That is sufficient.

712 F. Supp. 3d 1244, 1258 (N.D. Cal. 2024) (citations removed and emphasis added). To the extent the Court requires knowing Plaintiff's exact medication and dosage information at the pleading stage, this is easily remedied by affording Plaintiff an opportunity to supplement her pleading with a sealed filing with this additional allegation.

Finally, Defendant asserts the preposterous position that information provided on the Nevada Health Link questionnaire that was "optional" (but deemed helpful by Nevada Health Link) for procuring health insurance somehow justifies Defendant's interception of Plaintiff's personal medication information. *Id.* Defendant fails to point to anything in the allegations or record that Plaintiff's consent to disclose her personal medical information to Defendant hinged on whether the information she inputs into a website to procure health insurance was necessary or merely helpful.

Because Defendant could not offer any credible arguments that its terms with Plaintiff disclosed its conduct at issue here, Defendant instead relies on Nevada Health Link's Privacy Policy. But this reliance is misplaced as Defendant is not identified as an entity with whom Nevada Health Link shares data. *See* Dkt. No. 31-22 (identifying the following as receiving data from Nevada Health Link: 1) insurance plan carriers; 2) Nevada DWSS; 3) Nevada DHCFP; 4) U.S. DHHS; 5) IRS; and 6) tribal leaders). Even the section of the Nevada Health Link that Defendant relies upon, the "Collection of Information" section, explicitly states that none of the information Nevada Health Link collects will "be shared with any other person or entity unless it is required to determine eligibility or enroll in [insurance]." *See id.*; *see also* Dkt. No. 29, at 13-14. Assuming Plaintiff consented to Nevada Health Link's privacy policy (which she did not) and that affected Defendant's liability (which it does not), Defendant's conduct was not disclosed in the relevant website's privacy policy.

Finally, Plaintiff objected to Defendant's request to judicially notice its disclosures. Even if the Court considers the unattached and uncited materials, Defendant's policies are not dispositive of Plaintiff's claims because Defendant's disclosures repeatedly state that Plaintiff's explicit consent is required before Defendant collects Plaintiff's personal data. *See e.g.*, Dkt. No. 31-3 ("We seek […] your explicit, opt-in consent before [linking data to users and] take steps to ensure that consent has been provided"); *id.* ("You have choices about our use of your data. At any time, you can withdraw consent"); Dkt. No. 31-5 ("Most browsers allow you to control cookies through their settings, which may be adapted to reflect your consent to the use of cookies."). As Plaintiff repeatedly alleged, she did not give Defendant her explicit consent to collect her PHI as she communicated it to Nevada Health Link. *See* Dkt. No. 1, at ¶¶ 48, 57, 112.

Therefore, Plaintiff did not consent to Defendant's conduct and Defendant's motion should be denied.

**C. Plaintiff Adequately Pled Her Federal Wiretap Act Claim.**

***1. The application of the one-party consent rule is a question of fact.***

This Court should follow the *Brown v. Google LLC* decision and its line of cases that have held that just because a website owner installs a tracker pixel on its webpages does not mean as a matter of law that it has explicitly consented to sharing that information with the pixel owner, thereby overcoming the one-party consent exception of the Federal Wiretap Act, 18 U.S.C. § 2511(2)(d). 685 F. Supp. 3d 909, 933–34 (N.D. Cal. 2023) (denying the defendant's motion for summary judgment, ruling that "[t]hough the Court takes Google's point that website developers had to consent to Google collecting data *generally* when they added Google' services to their websites, Google has not proven that websites consented to the collection of users' private browsing data in particular.").

In a very analogous case involving Meta's pixel being installed on various webpages of healthcare websites, Judge Orrick held that:

> The facts alleged here – that while Meta disclosed its purported attempts to prevent third-party developers who incorporated the Pixel from sending sensitive data to Meta, Meta in fact intended to receive and did receive that sensitive data – bring this case closer to *Brown. Id.*, 685 F.Supp.3d at 926 ("For consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."). Meta has not pointed to anything I can judicially notice on this motion to dismiss to show as a matter of law that the healthcare providers did not just presumably but *actually* consented to the sending of sensitive healthcare information of its customers. Determination of whether actual consent was given depends on what Meta disclosed to healthcare providers, how it described and

> trained healthcare providers on the Pixel, and how the healthcare providers understood the Pixel worked and the information that then could or would be collected by Meta. These evidence-bound determinations are inappropriate to reach on this motion.

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) (emphasis in original).

Meanwhile, Defendant's reliance on *Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) and *Roe v. Amgen Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) should be rejected because they take an overly simplistic view of the complex technology, concepts, terminology and training involved in understanding how pixels operate and its complete flow of data that the Courts in *Google* and *Meta* considered, in ruling that a more developed factual record is necessary – or in fact there exist triable issues of fact—as to the application of the one-party consent exception. In short, there is concerningly more going on under the hood that needs to be fleshed out before this issue can be resolved.

### ***2. Plaintiff pled each element of her Federal Wiretap Act claim.***

To state a claim for violation of the Federal Wiretap Act, "plaintiffs must plausibly allege that Meta (1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075 (N.D. Cal. 2023). In Section IV.A, Plaintiff demonstrated that she sufficiently alleged that Defendant acted intentionally in intercepting her communications with Nevada Health Link.

Plaintiff also sufficiently alleges that the interception occurred while the communication was in transit from Plaintiff to Nevada Health Link. Specifically, Plaintiff alleged that Defendant intentionally intercepted Plaintiff's and Class Members' communications consisting of their private data, including health information. Dkt. No. 1, at ¶¶ 103, 111. Additionally, Plaintiff alleged that Defendant's Insight Tag was programmed to automatically duplicate, in transit, Plaintiff's communications with Nevada Health Link before the communications reached them. *Id.*, at ¶ 28-29; *see also id.*, at ¶¶ 4, 35. Plaintiff alleged that Defendant designed the Insight Tag to collect all interactions with the Nevada Health Link website. *Id.*, at ¶ 39. Numerous courts have held that nearly identical allegations were sufficient to meet the similar "in transit" requirement under CIPA, Cal. Penal Code § 631(a). *See e.g., Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838–39 (E.D. Cal. 2025) (allegations that "Plaintiffs and Class Members had no idea when they interacted with Defendants' websites that their personal data, including sensitive medical data,

was being collected and simultaneously transmitted to Facebook" was sufficient to plead "interception" while "in transit"); *M.G. v. Therapymatch, Inc.*, No. 3:23-cv-04422-AMO, 2024 WL 4219992, at *4 (N.D. Cal. Sep. 16, 2024) (rejecting the defendant's argument that the plaintiff failed to plead "interception" under CIPA because two separate communications occurred because the plaintiff had actually pled that the interception was "simultaneous"); *Mitchell v. Sonesta Int'l Hotels Corp.*, No. 2:24-cv-2603-GW-SSC, 2024 WL 4471772, at *8 (C.D. Cal. Oct. 4, 2024), *adopted as modified*, No. 2:24-cv-2603-GW-SSC, 2024 WL 4474491, at *8 (C.D. Cal. Oct. 4, 2024) (denying motion to dismiss Section 631(a) CIPA claim on the grounds that plaintiff did not plausibly allege communications were intercepted in transit because plaintiff alleged "simultaneous duplication" via tracking technologies on defendant's website); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130–31 (S.D. Cal. 2023) (same).

Moreover, "[a]t the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured." *St. Aubin v. Carbon Health Techs., Inc.*, No. 4:24-cv-00667-JST, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024). "A pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny OpCo, LLC*, No. 3:23-cv-00981-BAS-DDL, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023); *see Tenet Healthcare Corp*., 789 F. Supp. 3d at 839 (same).

Meanwhile, Defendant does not dispute that Plaintiff sufficiently alleged the elements of electronic communications and Defendant's use of a device. *See* Dkt. No. 29, at 15-18.

Plaintiff sufficiently alleged that the contents of her communications were intercepted not just routing data; specifically, Plaintiff alleged that Defendant intercepted her medication and dosage information which was the substance of her communication with Nevada Health Link. *See* Dkt. No. 1, at ¶¶ 12, 44-50. The Federal Wiretap Act defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C.A. § 2510(8) (West). In other words, the contents of a communication are "a person's intended message to another." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Courts routinely recognize health information—such as medication information—as contents of communications. *See e.g.*, *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 894 (S.D. Cal. 2025) (finding searches for prescriptions were contents of communications under Federal

Wiretap Act); *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003) ("Transmissions of completed online forms, such as the one at Pharmacia's Detrol website, to the pharmaceutical defendants constitute electronic communications."); *see also In re Zynga Priv. Litig.*, 750 F.3d at 1107 (analyzing *In re Pharmatrak* and finding that "Because the users had communicated with the website by entering their personal medical information into a form provided by a website, the First Circuit correctly concluded that the defendant was disclosing the contents of a communication.").

Despite Defendant's unsupported and illogical argument otherwise, the medication and dosage information that Plaintiff communicated to Nevada Health Link did not lose its status as contents of communications simply because the communication was optional. Were that the case, all wiretap cases would fail at the pleading stage since all communications are optional to some degree. Therefore, Plaintiff has sufficiently alleged her claim for violation of the Federal Wiretap Act and Defendant's motion should be denied.

**D. Plaintiff Adequately Pled Her Claim for Intrusion Upon Seclusion.**

"In order for an individual to bring a claim for invasion of privacy based on intrusion upon seclusion, the individual must show: 1) an intentional intrusion (physical or otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive to a reasonable person." *Campos v. Town of Pahrump*, 274 F. Supp. 3d 1106, 1118 (D. Nev. 2017) quoting *Iorio v. Check City P'ship, LLC*, No. 64180, 2015 WL 3489309, at *3 (Nev. May 29, 2015). As argued above in Section IV.A, Plaintiff adequately alleged that Defendant intended to collect Plaintiff's private data, including her health data, and Plaintiff also alleged the remaining elements of her intrusion upon seclusion claim.

***1. Plaintiff had a reasonable expectation of privacy.***

Under Nevada law, a person meets the element of solitude or seclusion if they show that they had an actual expectation of solitude or seclusion and their expectation is objectively reasonable. *See M & R Inv. Co. v. Mandarino*, 103 Nev. 711, 719, 748 P.2d 488, 493 (1987). Here, Plaintiff actually expected that her PHI would not be shared with anyone beyond Nevada Health Link. Dkt. No. 1, at ¶ 49 ("Plaintiff reasonably believed that her interactions with Nevada Health Link were private and would not be intercepted by a third-party, let alone utilized for advertising purposes."); *id.*, at ¶ 48 ("Plaintiff never consented to the interception of her PHI by LinkedIn."); *id.*, at ¶ 52 ("when Plaintiff was on the Website,

there was no indication that the Insight Tag was embedded or that it would collect her PHI."). Nevada Health Link reinforced Plaintiff's actual expectation by disclosing that Plaintiff's PHI would only be disclosed to other entities to the extent necessary to evaluate her eligibility for insurance and Defendant was not identified as an entity that received her PHI. *See* Dkt. No. 1, at ¶¶ 53-54; Dkt. No. 31-22. Additionally, society has long recognized the importance of maintaining privacy for health information. *See e.g.*, *Clark Cnty. Off. of Coroner/Med. Exam'r v. Las Vegas Rev.-J.*, 136 Nev. 44, 56, 458 P.3d 1048, 1058 (2020) (there is "a clear public policy favoring the protection of private medical and health-related information."); *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1084 (9th Cir. 2007) ("Congress intended through [HIPPA] to recognize the importance of protecting the privacy of health information in the midst of the rapid evolution of health information systems.") (citation modified); *see also Lopez v. Cnty.*, No. 2:16-CV-0218-APG-GWF, 2016 WL 7391036, at *2 (D. Nev. Dec. 20, 2016) (finding plaintiff adequately alleged intrusion upon seclusion claim because plaintiff did not consent to sharing his PHI).

Defendant attempts to refute the reasonableness of Plaintiff's expectation by arguing that the Nevada Supreme Court has not explicitly applied this tort to cookie technology, but then goes further by analogizing this case with two cases in which the Nevada Supreme Court rejected seclusion claims: *PETA v. Bobby Bersoni, Ltd.*, 111 Nev. 615 (1995), involving the filming of animals beaten by steel rods at the hands of a trainer in the backstage area of a public show; and *M & R Inv Co. v. Mandarino*, 103 Nev. 711, 718-19 (1987), involving the photographing of an allegedly cheating gambler in a "public gaming establishment." Dkt. No. 29 at 18-19. Defendant asserts that Plaintiff's allegations cannot meet such a "high bar for an inclusion claim" *Id.* at 19. There is much to unpack here.

First, it is not necessary that the Nevada Supreme Court explicitly apply the tort of intrusion upon seclusion to cookie technology because courts have uniformly found that there may be a reasonable expectation of privacy for some activity on the internet. *See United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007) ("A person's reasonable expectation of privacy may be diminished in transmissions over the Internet or e-mail that have already arrived at the recipient.") (citation modified). Indeed, courts have routinely held that California's invasion of privacy claim, which contains the same elements as Nevada's version, applies to the conduct at issue here, including as it pertains to a reasonable expectation of privacy when customers interact with healthcare websites. *See, e.g., Tenet Healthcare*

*Corp.*, 789 F. Supp. 3d at 842–44 ("The court agrees with Plaintiffs that they have alleged a reasonable expectation of privacy with respect to the PHI that they provided on Defendants' Web Properties."); *Doe I v. Google LLC*, No. 3:23-cv-02431-VC, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) (Courts have held "[t]here is a reasonable expectation of privacy in one's private health information." (citation omitted)); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023); *see also B.K. v. Desert Care Network*, No. 2:23-CV-05021 SPG (PDX), 2024 WL 1343305, at *9 (C.D. Cal. Feb. 1, 2024) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person ....", and "[p]atients' right to privacy in their medical records is 'well-settled.'") (citation omitted)).

Second, Defendant appears to be making the absurd argument that a person abusing animals at the backstage of a public show or walking through a public casino has the same *lack* of a reasonable expectation of privacy as someone who enters their medication and dosage information in the state's insurance exchange website while trying to procure health insurance. To the contrary, if Defendant were to go outside Plaintiff's house and use high-tech binoculars to read the names of Plaintiff's medications and dosage amounts sitting on a shelf, or listen in on Plaintiff's doctor's appointment to discuss her medications and health insurance plans, then Defendant would have invaded Plaintiff's reasonable expectation of privacy by "nosing into intimacies [Plaintiff] sensibly thought protected from disclosure." *See Fla. v. Jardines*, 569 U.S. 1, 12, 133 S. Ct. 1409, 1418, 185 L. Ed. 2d 495 (2013) (Kagan, J., concurring). "That case is this case in every way that matters." *See id.* Therefore, Plaintiff readily satisfied this element.

#### ***2. Plaintiff sufficiently alleged Defendant's conduct is highly offensive.***

"A court considering whether a particular action is "highly offensive" should consider the following factors: the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *PETA v. Bobby Berosini, Ltd.*, 111 Nev. 615, 634 (1995) (citation omitted).

Here, each of these factors weighs in favor of finding that Plaintiff adequately alleged that Defendant's conduct was highly offensive. First, Defendant's degree of intrusion is significant since Plaintiff alleged that Defendant manipulated Plaintiff's "browser by secretly instructing it to duplicate

[her] communications (HTTP Requests) with Nevada Health Link and to send those communications to LinkedIn.") Dkt. No. 1, at ¶ 28. Second, Plaintiff alleged that the context of Defendant's intrusion was a conversation between Plaintiff and the government, involving her medication and dosage information, as she searched for health insurance. *Id.*, at ¶¶ 12, 44-50. Third, Plaintiff alleged that Defendant's motive was to monetize the PHI that it collected. *Id.*, at ¶ 9. As noted above, Plaintiff expected that her communications with Nevada Health Link would remain confidential. *See*, *supra*, § IV.D.1.

This Court has already held that similar allegations as to LinkedIn's conduct sufficiently pled "highly offensive" conduct. *L.B.*, 2025 WL 2899514, at *19, *citing In re Google Location History Litig.*, 514 F. Supp. 3d at 1157 ("Whether Google's collection and storage of location data when Location History was set to off was highly offensive to a reasonable person is a question of fact."); and *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.")). In fact, the allegations at issue here, the tracking of medication and dosage information, are far more egregious than in *L.B.*, which involved merely a mix of general personal information. *See id.*

Accordingly, Plaintiff sufficiently pled her claim for intrusion upon seclusion and Defendant's motion should be denied.

**V. CONCLUSION**

For the above reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss or, in the alternative, grant Plaintiff leave to amend the Complaint.

Dated: January 30, 2026

**LYNCH CARPENTER, LLP**

By: _/s/ (Eddie) Jae K. Kim_

(Eddie) Jae K. Kim (SBN 236805)
ekim@lcllp.com
Tiffine E. Malamphy (SBN 312239)
tiffine@lcllp.com
117 E Colorado Blvd, Ste 600
Pasadena, CA 91105-3712
Tel.: (213) 723-0707
Fax: (858) 313-1850

*Attorneys for Plaintiff and Proposed Class Counsel*