KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
SPENCER MCMANUS - # 322824
smcmanus@keker.com
LIAM BROWN - # 347518
liambrown@keker.com
FLORA D. MORGAN - #359733
fmorgan@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant
LINKEDIN CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIMBERLY JOHNSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 5:25-cv-08100-EJD<br><br>**DEFENDANT LINKEDIN CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: March 19, 2026<br>Time: 9:00 a.m.<br>Dept.: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila<br><br>Date Filed: September 24, 2025<br><br>Trial Date: None Set |

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 3

A. Plaintiff fails to explain how her allegations are sufficient for intent in light of the Ads Agreement and Nevada Health Link's status as a government actor. ..... 3

B. Plaintiff cannot plausibly allege lack of consent given the undisputed judicially noticeable facts of how Nevada Health Link's website operated. ..... 5

C. Plaintiff's Federal Wiretap Act claim fails because the one-party consent rule applies, and she otherwise fails to plead the elements of the claim. ..... 7

1. LinkedIn is exempt from liability under the one-party consent rule. ..... 7

2. Plaintiff fails to plead the elements of a Federal Wiretap Act claim. ..... 9

D. Plaintiff fails to state a claim for intrusion upon seclusion under Nevada law. ..... 11

1. The Nevada Supreme Court has never applied the tort to cover the provision of advertising technology like the Insight Tag. ..... 11

2. Plaintiff cannot plausibly plead an objectively reasonable expectation of privacy under the circumstances. ..... 12

3. LinkedIn's conduct was not highly offensive to a reasonable person. ..... 13

III. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) .......... 9

*Alaska Airlines, Inc. v. Johnson*,
8 F.3d 791 (Fed. Cir. 1993) .......... 3

*Borg-Warner Corp. v. Commissioner of Internal Revenue*,
660 F.2d 324 (7th Cir. 1981) .......... 4

*Brown v. Google*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 1, 8

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 8

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 6

*Doe v. Meta Platforms*,
690 F. Supp. 3d 1064 (N.D. Cal. 2024) .......... 1, 8

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... *passim*

*Lopez v. Clark County*,
2016 WL 7391036 (D. Nev. Dec. 20, 2016) .......... 12

*M & R Inv. Co. v. Mandarino*,
103 Nev. 711 (1987) .......... 11

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 9

*PETA v. Bobby Bersoni, Ltd.*,
111 Nev. 615 (1995) .......... 2, 11, 14

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 8

*United States v. Chemical Foundation*,
272 U.S. 1 (1926) .......... 3

**Statutes**

18 U.S.C. § 2511(2)(d) .......... *passim*

**Other Authorities**

Fed. R. Civ. Proc. 8 ....................................................................................................2, 4, 5

Fed. R. Civ. Proc. 9(b)..............................................................................................4, 5, 14

## I. INTRODUCTION

Plaintiff's opposition does not cure the deficiencies LinkedIn identified in its motion. It compounds them. Most critically, Plaintiff leaves unaddressed the two features of this case that set it apart from the complaints this Court considered in *L.B. v. LinkedIn Corp.*, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025).

First, the website at issue—Nevada Health Link—is not one run by a private company. It is operated by a Nevada state government agency. That distinction matters. In *L.B.*, this Court found that plaintiffs' intent allegations—directed at private healthcare companies—created only a "relatively weak" inference to satisfy the intent requirement. Here, the inference is non-existent. Under the presumption of regularity, LinkedIn was entitled to expect that a government actor would obey its own state laws and honor the LinkedIn Ads Agreement, which expressly forbids advertisers from using the Insight Tag to transmit health information to LinkedIn. Plaintiff's complaint is devoid of any allegations to rebut that presumption. Plaintiff does not dispute Nevada Health Link's government status, nor does she offer any authority for why her bare allegations could support an inference of criminal or tortious intent in spite of it.

The second issue is equally damning and equally unaddressed. The only questions on the enrollment form that touch on health are "optional." That is in stark contrast with *L.B.*, where plaintiffs identified specific, mandatory survey questions about weight loss methods, medication goals, mental health conditions, and gender that they allegedly answered on private healthcare platforms. In contrast, Plaintiff here fails to plausibly allege that she answered these "optional" questions. These are not gaps in detail. They are the absence of a claim.

Together, these issues expose the failure of both claims. Plaintiff's opposition also confirms the other case-dispositive defects in her complaint.

***Federal Wiretap Act.*** The Wiretap Act is a one-party consent statute, and the materials Plaintiff herself cites establish that Nevada Health Link or its agent placed the Insight Tag on its own website, thereby consenting to the Tag's operation. That should end the matter. Plaintiff asks the Court to defer this question, but there is nothing to defer: the record is undisputed as is the legal conclusion that follows from it.

Even looking past the consent defense, Plaintiff has not stated a Wiretap Act claim. She has not plausibly alleged intent: the Wiretap Act is a criminal statute demanding purposeful and deliberate action—not negligence, not constructive knowledge, and not the recycled industry-awareness allegations (about other companies, in other contexts) on which she relies. She has not plausibly alleged interception: her bare assertions that the Tag operated "simultaneously" or "contemporaneously" are formulaic recitations that do not survive Rule 8—and are no more specific than the allegations this Court found insufficient in dismissing the analogous CIPA claims in *L.B.* And she has not plausibly alleged that any protected "contents" were captured, because she has not plausibly alleged she submitted any health information through the website during the period the Tag was active. The claim fails at every turn.

***Nevada intrusion upon seclusion***. Plaintiff's state-law claim asks this Court to go where not even the Nevada Supreme Court has gone. The Nevada Supreme Court has recognized intrusion upon seclusion only in cases of physical invasions of private spaces—and declined to find it even for covert videotaping and nonconsensual photography. No Nevada Supreme Court case has ever applied this tort to internet advertising technology on a public government website. There is a reason for that.

Even assuming the tort reaches this far, every element cuts against Plaintiff. She cannot claim a reasonable expectation of privacy in data she voluntarily provided to the government via a public website, in response to questions marked optional. Both LinkedIn and Nevada Health Link disclosed the very practices of which Plaintiff now complains. And no *PETA* factor supports a finding that LinkedIn's conduct was "highly offensive." There is no well-pleaded allegation of motive—no claim that LinkedIn targeted Plaintiff's data, sought her health information, or served her a single targeted advertisement. The Nevada Supreme Court has held that the absence of an improper motive can be "dispositive" of the offensiveness inquiry. It is dispositive here.

The complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiff fails to explain how her allegations are sufficient for intent in light of the Ads Agreement and Nevada Health Link's status as a government actor.

Plaintiff does not dispute that the LinkedIn Ads Agreement—which she cites in her complaint and for which she does not oppose judicial notice—conditions Nevada Health Link's installation of the Insight Tag on its agreement not to transfer to LinkedIn any "Sensitive Data," including health data. *See* MTD at 9–12. Nor does she dispute that in *L.B.*, the Court found that this agreement weakened any inference of intent. *L.B.*, 2025 WL 2899514, at *11–13. And Plaintiff fails to rebut the three arguments presented by LinkedIn for why her allegations of intent are significantly weaker than those that barely crossed the pleading threshold in *L.B.*

***First***, and most importantly, unlike *L.B.*, this case involves a ***government actor***, which, under the presumption of regularity, LinkedIn was entitled to presume would follow its own laws and the Ads Agreement. *See United States v. Chemical Foundation*, 272 U.S. 1, 14–15 (1926). Plaintiff provides no explanation or authority for how her barebones allegations could support a finding of intent given this distinction. Indeed, Plaintiff affirmatively relies on Nevada Health Link's status as a government actor in arguing elsewhere in her opposition that she had a reasonable expectation of privacy. *See* Opp. at 13 (claiming the "context" of the alleged interception was "a conversation between Plaintiff and the government"). Plaintiff's only response is that the presumption of regularity applies to government actors and not to private companies like LinkedIn. Opp. at 4. But Plaintiff is incorrect. Courts regularly hold that the presumption is "equally applicable and appropriately applied" where private parties presume the government will follow the law. *See, e.g.*, *Alaska Airlines, Inc. v. Johnson,* 8 F.3d 791, 796 (Fed. Cir. 1993) ("While the application of this presumption usually runs in favor of the government, it is equally applicable and appropriately applied in the airlines' favor in this case."). Moreover, Plaintiff's argument misses the point of LinkedIn's argument, which is that the presumption of regularity diminishes an already weak inference of intent. The presumption of regularity means that LinkedIn could lawfully presume that ***Nevada Health Link*** would act in accordance with the law. For it to be otherwise would be contrary to "the interests of fairness." *See Borg-Warner*

*Corp. v. Commissioner of Internal Revenue*, 660 F.2d 324, 330 n.5 (7th Cir. 1981) ("In the interests of fairness, the presumption of regularity should operate to the benefit of the taxpayer as well as the government.").

***Second***, unlike in *L.B.*, Plaintiff includes in her complaint (through an article in *The Markup*) allegations explicitly showing that Nevada Health Link, not LinkedIn, placed the Tag and thereby controlled what data was transmitted to LinkedIn. *See* Compl. ¶ 7 & n.4. Plaintiff responds that Nevada Health Link contracted creation of its website to a third-party vendor and relies on third-party technology stacks, such that Nevada Health Link may not have had control over the placement of the Tag. Opp. at 3 (citing David McGrath Schwartz, *State approves $6 million contract to publicize health insurance exchanges*, LAS VEGAS SUN (Jan. 8, 2013), https://lasvegassun.com/news/2013/jan/08/state-approves-6-million-contract-publicize-health/). This is not alleged in the complaint. But even if it were, this would only further confirm what *The Markup* article already made clear: that some third party—Nevada Health Link or its agent—and ***not*** LinkedIn, controlled placement of the Tag on the Nevada Health Link website and what data it collected and allegedly transmitted to LinkedIn.

***Finally***, unlike in previous cases, Plaintiff affirmatively cites and makes allegations regarding the Ads Agreement. Compl. ¶ 56. Plaintiff thus incorporates by reference the statements in the Ads Agreement prohibiting advertisers from transmitting health information to LinkedIn, but simultaneously (and conclusorily) alleges that LinkedIn actually intends to collect such information. This amounts to an allegation that the statements in the Ads Agreement are fraudulent misrepresentations, pushing this complaint over the line previously drawn by the Court in *L.B.* and triggering "the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *L.B.*, 2025 WL 2899514, at *13 n.10. Plaintiff's allegations of intent do not satisfy Rule 8, much less Rule 9(b). The allegations Plaintiff relies on merely state legal conclusions about intent (*see* Compl. ¶¶ 39–40, 103, 111) or make allegations involving other companies, not

LinkedIn (*see id.* ¶¶ 41–43).[1] Plaintiff's response is that the Court cannot apply the heightened pleading standard because she has chosen not to explicitly allege fraud. Opp. at 4. But while the Court determined it did not need to reach that issue based on the allegations in *L.B.*, Plaintiff here has taken a step further by citing the Ads Agreement and calling into question its veracity, triggering Rule 9(b). Indeed, in her opposition to LinkedIn's request for judicial notice, Plaintiff essentially admits that she is contesting that LinkedIn enforces the terms of the Ads Agreement. *See* Dkt. 33 at 2 (her "allegations dispute that Defendant enforces its policies"). But Plaintiff lacks any well-pled facts establishing that the statements in the Ads Agreement are false, much less any facts that could satisfy Rule 9(b)'s heightened standard for pleading falsity.

Ultimately, under either Rule 8 or Rule 9(b), Plaintiff has failed to plausibly allege that LinkedIn had the requisite intent to violate the federal Wiretap Act (a criminal statute) or to intrude upon her seclusion under Nevada law. Her claims should be dismissed.

### B. Plaintiff cannot plausibly allege lack of consent given the undisputed judicially noticeable facts of how Nevada Health Link's website operated.

Plaintiff fails to grapple with the reasons provided by LinkedIn for why her allegations here are weaker than those that the Court found sufficient to plead lack of consent in *L.B.*, 2025 WL 2899514, at *6–7.

***First***, Plaintiff does not dispute any of the judicially noticeable facts presented by LinkedIn about how the website forms at issue here operate. These include, most importantly:

- The only questions in the online application form that have anything to do with health information are marked "Optional." McManus Decl. Ex. J5 (optional questions); *id.* Exs. J3–4, J6–8 (remainder of online enrollment pages).
- A user does not need to use the online form to apply or shop for health insurance and can instead use the mail, telephone, or in-person options provided elsewhere on the website. McManus Decl. Ex. J2.

---

[1] Other paragraphs that Plaintiff cites don't plausibly speak to LinkedIn's intent to intercept health data. *See* Opp. at 2 (citing Compl. ¶¶ 4, 9, 28–29, 35).

What this means is that a user can fill out the online enrollment form without ***ever*** having to provide health information—and that a user can use the website to shop for and apply for health insurance without even filling out that online form.

In light of these facts, Plaintiff's barebones allegations that she filled out some unspecified "forms," provided unspecified "sensitive health information," and "submitted her medication and dosage information [to] Nevada Health Link" in some unspecified way are insufficient and implausible. These allegations stand in stark contrast to the ones that the Court found sufficient on a motion to dismiss in *L.B.*: in those cases, the plaintiffs identified numerous specific questions that they responded to in required forms. *L.B.*, 2025 WL 2899514, at *6–7. For example, for one website, the plaintiff alleged:

> Customers ***must*** complete a survey on the website to determine if they qualify for the medication. The survey asks users to identify their gender at birth, height, weight, and how many pounds they would like to lose. The survey also asks users to select which goals they are looking to accomplish: "lose weight," "improve general health," "look better," "improve confidence," "increase energy," and/or "better sex." The survey then asks users to select what weight loss methods they have used in the past: "exercise," "dieting," "weight loss supplements," "intermittent fasting," and/or "medical weight loss program."

*Id.* at *6 (emphasis added) (citations omitted). For another, plaintiff alleged, "To get connected with care, patients ***must*** provide information regarding their location, concerns—specifically asking users to choose 'ADD/ADHD,' 'anger management,' 'anxiety,' 'bipolar disorder,' etc.—and insurance carrier." *Id.* at *7 (emphasis added).[2]

In response, Plaintiff mischaracterizes LinkedIn's argument as faulting her for not including in her allegations the specific medication information she purportedly submitted. Opp. at 5–6. Not so. LinkedIn's argument is that Plaintiff failed to plead facts sufficient to plausibly allege that she submitted any medical information at all in a way that was captured by the Insight

[2] For the same reason, *Doe v. FullStory, Inc.* is inapposite because unlike Plaintiff here, the plaintiff in that case specifically alleged that she provided personal health information to Favor, a "telemedicine company," in connection with "obtaining prescriptions for birth control, emergency contraceptives, and condoms." 712 F. Supp. 3d 1244, 1258 (N.D. Cal. 2024); *contra* Opp. at 6.

Tag. Similarly, Plaintiff responds that it does not matter if a question that she answered with sensitive health information is labeled "Optional." *Id.* at 6. But this response also misses the point, which is that there is no plausible allegation that Plaintiff answered such a question at all.

***Second***, this case presents a timing issue not present in *L.B.* Even if Plaintiff's allegations could be read to say that she filled out the optional form and responded to the optional questions with medically sensitive information, she does not allege that she did that during the time when the Insight Tag was allegedly installed. In response, Plaintiff merely points to her allegation that she "used the Website in 2019 and . . . in 2024." Compl. ¶ 12. But Plaintiff does not dispute that, by her own allegations, the Tag was installed on the website for less than half of that time. *See id.* ¶ 21 (alleging use of the Tag from February 2024 to May 2025). And, as discussed above, it is undisputed that "using the Website" does not necessarily involve filling out the electronic form or answering health-related questions. Indeed, Plaintiff now claims that she never agreed to Nevada Health Link's terms (*see* Opp. at 6), which a user must do to submit the electronic enrollment form (McManus Decl. Ex. J8), casting further doubt on whether she ***ever*** filled out the form at all.

At bottom, the only reasonable inference remaining is that Plaintiff at most submitted generic website interaction data to Nevada Health Link, which both Nevada Health Link and LinkedIn disclosed that they may collect. Because the data practices Plaintiff complains about were disclosed to her, her claims should be dismissed. *See* MTD at 12–15 (citing cases).

### C. Plaintiff's Federal Wiretap Act claim fails because the one-party consent rule applies, and she otherwise fails to plead the elements of the claim.

#### 1. LinkedIn is exempt from liability under the one-party consent rule.

Plaintiff agrees that the one-party consent rule is a complete defense to liability under the Federal Wiretap Act, *see* 18 U.S.C. § 2511(2)(d), but urges the Court to defer this issue past the pleadings. Opp. at 7. The Court should not do so because Plaintiff's own allegations and materials cited in the complaint establish that the one-party consent rule applies. *See* MTD at 15. The article from *The Markup* that Plaintiff cites confirms that the Insight Tag is placed by the advertiser—here, Nevada Health Link—who decides what information the Tag should transmit. Compl. ¶ 4 & n.7; McManus Decl. Ex. L (Nevada Health Link executive characterizing the Tag

as a "tracker[] placed by his Nevada agency"). Indeed, the *Las Vegas Sun* article Plaintiff cites in her opposition brief confirms that Nevada Health Link and its agent were responsible for building the health exchange website, including placement of the Insight Tag. *See* Opp. at 3. By "choos[ing] to install [LinkedIn] source code" on its website (or permitting its agent to do so), Nevada Health Link "consented to the operation of [LinkedIn] source code." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024); *see also Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (Federal Wiretap Act claim barred by one-party consent rule where defendant, "as the creator and operator of its website, consented to the use of data collection tools it installed on its website")[3]; *cf. L.B.*, 2025 WL 2899514, at *11 (dismissing ECPA claim and other claims due to plaintiff's one-party consent).

Far from being "very analogous," the two cases Plaintiff cites that declined to dismiss Federal Wiretap claims involved situations where plaintiffs plausibly alleged that defendants disclosed one thing while in fact doing another. In *Doe v. Meta Platforms*, plaintiff alleged that while Meta claimed to want to prevent third parties from sending sensitive data through its pixel, it in fact directed health care providers to upload patient lists and encouraged "health care marketers" to use Meta's pixel to collect data to target patients and "disrupt health and how we market to patients"; quoted Meta employees who explained how Meta can assist in the "patient journey"; and provided a litany of examples of Meta developing and distributing targeted advertising using health-related data. ECF No. 185 at 12–13, 28–31, 35, No. 3:22-cv-03580-WHO (N.D. Cal. Feb. 21, 2023); 690 F. Supp. 3d 1064 (N.D. Cal. 2024). And in *Brown v. Google*, the court found at summary judgment a "triable issue as to whether [Google's] Privacy Policy could reasonably be interpreted . . . not [to] collect users' data while they were in privacy browsing mode" such that deployers of the Google tracking code consented to collection while in that browsing mode. 685 F. Supp. 3d 909, 933 (N.D. Cal. 2023). Here, there are no plausible

---

[3] Plaintiff criticizes *Doe I* and *Roe* as "tak[ing] an overly simplistic view of the complex technology" as issue, Opp. at 8, but fails to explain why that is the case or how those courts' legal analyses of the one-party consent rule are erroneous. They are not.

allegations that LinkedIn's disclosures are unclear: based on materials that Plaintiff herself cited, LinkedIn discloses to users and the public at large exactly what data the Insight Tag collects and what pages advertisers are allowed to put the Tag on. Compl. ¶ 56 & n.14; McManus Decl. Exs. E, H, I. Plaintiff has not made any plausible allegations that those disclosures are unclear.

The Court should dismiss the Federal Wiretap Act claim under the one-party consent rule.

**2. Plaintiff fails to plead the elements of a Federal Wiretap Act claim.**

To state a Federal Wiretap Act claim, Plaintiff must plead that LinkedIn "(1) intentionally (2) intercepted (3) the contents of (4) plaintiff['s] electronic communications (5) using a device." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794–95 (N.D. Cal. 2022) (citing *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003)). Plaintiff's arguments that she pleads each of these elements fail to persuade.

***Not intentional.*** For the reasons discussed *supra* Section II.A, Plaintiff has not alleged (and cannot allege) intent.

***No interception.*** Plaintiff has failed to plead any facts satisfying the statutory element of interception, which requires her to allege that an interception occurred at the same time as the "transmission" of a communication. MTD at 16–17 (citing *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)). Plaintiff fails to explain how her bare legal allegations that information was intercepted "simultaneously" or "contemporaneously" make interception plausible. Compl. ¶¶ 28, 32, 34, 80, 85, 93, 95.

Nor does Plaintiff differentiate these allegations (or any others) from the equally conclusory allegations that this Court found insufficient in *L.B.* in dismissing plaintiffs' California Invasion of Privacy Act claims for lack of plausible allegations of "in transit" interception. *See L.B.*, 2025 WL 2899514, at *16; *see also Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (analogizing "transmission" requirement of Federal Wiretap Act to "in transit" requirement of CIPA). In *L.B.*, this Court found that allegations that the interception occurred in "real time" or "at the time users input said communications into the websites . . . d[id] not provide fair notice of exactly when or how LinkedIn intercepted the communications[,]" and therefore did not amount to plausible allegations of in transit

interception. 2025 WL 2899514, at *16. Plaintiff's allegations here of "simultaneous[]" or "contemporaneous[]" interception are similarly insufficient to satisfy her pleading burden for an interception occurring during "transmission."

Plaintiff protests that to require her to plead more would require her to "engage in a one-sided guessing game" about the way the Insight Tag operates. *See* Opp. at 9 (quoting *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023)). But that is not what is required, and it is not the standard this Court applied in *L.B.* As this Court held, while "[p]laintiffs need not prove their theory of interception to survive dismissal, [] they must provide fair notice to [LinkedIn] of when they believe [LinkedIn] intercepts their communications" by alleging "specific facts about when . . . and how the interception took place." *L.B.*, 2025 WL 2899514, at *16 (quoting *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017), and *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024)). Plaintiff's mere recitation of synonyms for interception during "transmission" do not provide that fair notice.

***No contents.*** Plaintiff has offered no plausible allegations that LinkedIn intercepted the "contents" of any communication with Nevada Health Link. MTD at 17–18. Plaintiff's only response is to double down on her single allegation of submission of "medication and dosage information Nevada Health Link [*sic*]." Compl. ¶ 12. As discussed *supra* Section II.B in the context of consent, that allegation is merely parroted from *The Markup* article, *see* McManus Decl. Ex. L at 3. Even assuming she made such a submission, she has failed to allege that she made the submission on Nevada Health Link's website during the time the Tag operated on the website, as it could have occurred in 2019 or 2024 before Nevada Health Link implemented the Tag. And if anything, Nevada Health Link's website makes clear that answering questions about medication or dosage information are optional, further undermining the plausibility of Plaintiff's allegations. Because Plaintiff lacks well-pleaded facts about her submission to Nevada Health Link, she has failed to plausibly plead the "contents" of communications.

The Federal Wiretap Act claim must be dismissed for failure to plausibly plead the elements of the claim.

### D. Plaintiff fails to state a claim for intrusion upon seclusion under Nevada law.

#### 1. The Nevada Supreme Court has never applied the tort to cover the provision of advertising technology like the Insight Tag.

Plaintiff's discussion of the Nevada Supreme Court's application of the intrusion upon seclusion tort is notable for what she does not dispute or address. Plaintiff does not meaningfully dispute the high bar that the Nevada Supreme Court has imposed on intrusion upon seclusion claims under Nevada law. Nor does she address the fact that Nevada Supreme Court has stated that the tort aims to protect against "physical invasion[s] upon the 'solicitude or seclusion' of another" in "place[s] traditionally associated with a legitimate expectation of privacy[,]" like a "private bedroom . . ., hospital room . . ., a restroom . . ., or [] a young ladies' dressing room[.]" *PETA v. Bobby Bersoni, Ltd.*, 111 Nev. 615, 630, 634–35 (1995) (quoting Restatement (Second) of Torts § 652B); *see also* MTD at 18–19.

Instead, Plaintiff urges the Court to expand the scope of the Nevada tort to this context based on her assertion that "courts have uniformly found that there may be a reasonable expectation of privacy for some activity on the internet." Opp. at 11. Even taking that assertion at face value, Plaintiff puts the cart before the horse (rather, the element before the claim). Plaintiff offers no explanation for why this Court should in the first instance extend a Nevada tort to cover commonplace internet technology where (1) neither party has cited any Nevada authority applying the tort to that context, and (2) the Nevada Supreme Court has explained that the tort aims to cover physical invasions into private space.

Plaintiff attempts to deflect the two Nevada Supreme Court cases rejecting application of the Nevada tort by suggesting that it is "absurd" to compare the conduct in those cases to that alleged here. *See* Opp. at 12; *PETA*, 111 Nev. at 618, 631–32 (rejecting claim by animal trainer filmed in private backstage area without consent while he was "disciplining" his animals, which videotape was distributed to the public with commentary that he "regularly . . . beat[] [the animals] with steel rods"); *M & R Inv. Co. v. Mandarino*, 103 Nev. 711, 718–19 (1987) (rejecting claim by individual who entered public casino in disguise and whose undisguised photo was publicly distributed by casino who confiscated winnings and accused him of counting cards). But

Plaintiff's argument misses the point, which is that the two primary Nevada cases considering this tort found that it did ***not*** apply even to situations involving public disclosure of potentially criminal activity (animal abuse and fraud) via undisclosed and unconsented videotaping. Nevada Health Link's deployment and use of commonplace internet technology—which use was disclosed to Plaintiff—falls far short of those situations.

The Court should not extend the Nevada tort to apply to commonplace internet technology, where no Nevada court has done so.

**2. Plaintiff cannot plausibly plead an objectively reasonable expectation of privacy under the circumstances.**

Even assuming the Nevada tort should be extended to apply in this context, Plaintiff fails to plausibly plead an objectively reasonable expectation of privacy under the circumstances. The Nevada Health Link Privacy Policy—which she would have been required to accept to the extent she submitted any information through the site—disclosed that it would collect information about Plaintiff on its public website. McManus Decl. Exs. J8, K. LinkedIn likewise disclosed that third parties may use the Tag to collect information about website interactions. *Id.* Exs. B, C, F.

As an initial matter, Plaintiff fails to address LinkedIn's argument that, even if she did submit medication and dosage information, her stated expectation of privacy is not plausible because she would have submitted this information in response to optional questions. *See* MTD at 20 (citing McManus Decl. Ex. J5).

The single Nevada (federal) case that Plaintiff cites that found a reasonable expectation of privacy and allowed the Nevada tort to proceed involves far different conduct than is alleged here. Opp. at 10–11. In *Lopez v. Clark County*, plaintiff alleged that he was required to undergo a psychological examination to determine whether he was fit to continue his firefighting job. 2016 WL 7391036, at *1 (D. Nev. Dec. 20, 2016). Plaintiff alleged that the medical provider shared the resulting evaluation report with plaintiff's employer and union without him ever signing an authorization for them to do so, in violation of its affirmative duty not to disclose information without consent under HIPAA. *Id.* at *1–2. Here, as explained above, both LinkedIn and Nevada Health Link disclosed to Plaintiff in their privacy and cookie policies that they would

collect and share information about her website interactions, and Plaintiff consented to those policies by joining LinkedIn and allegedly submitting information to Nevada Health Link.

The analogy Plaintiff offers in favor of finding a reasonable expectation of privacy fares no better. She analogizes LinkedIn's alleged conduct to that of a person going outside her house and "us[ing] high-tech binoculars to read the names of [her] medication and dosage amounts sitting on a shelf" or "listen[ing] in on [her] doctor's appointment to discuss her medications and health insurance plans." Opp. at 12. That hypothetical scenario bears no resemblance to the circumstances alleged here. There are no plausible allegations that LinkedIn deliberately targeted Plaintiff specifically, much less her house or doctor's appointment in secret like a spy would. An unknown individual using binoculars or a listening device to eavesdrop on a specific individual and steal their medical information is nothing like Nevada Health Link's deployment on its public website of commonplace internet technology offered by LinkedIn, which LinkedIn disclosed to Plaintiff may be used on third-party sites to collect information about her browsing behavior.

Otherwise, Plaintiff resorts to relying on a general principle of "maintaining privacy for health information." Opp. at 11–12. But none of the cases she cites in support of this principle are tethered to the Nevada tort at issue here, and there is no allegation (much less a plausible one) that LinkedIn violated HIPAA or any other law concerning the handling of medical data that is implicated in some of the cases she cites. Nor did those cases consider a situation in which privacy policies—to which the Plaintiff consented—informed her that her website activity may be tracked and shared with third parties.

Plaintiff has failed to plead a reasonable expectation of privacy under the circumstances, requiring dismissal of her Nevada tort claim.

**3. LinkedIn's conduct was not highly offensive to a reasonable person.**

As LinkedIn explained in its motion, none of the factors Nevada courts consider weigh in favor of finding LinkedIn's context to be highly offensive to a reasonable person. *See* MTD at 20–22 (citing *PETA*, 111 Nev. at 630, 634). Plaintiff only addresses these factors in passing, instead hanging her hat on the Court's order in *L.B.*, which involved a claim for invasion of privacy under the California Constitution. *L.B.*, 2025 WL 2899514, at *19–20. As explained

above, Plaintiff here asserts materially different and more deficient allegations about (1) what information she submitted to Nevada Health Link and when, and (2) LinkedIn's conduct and (lack of) intent to receive health information via the Insight Tag, than those that the plaintiffs in *L.B.* and related cases asserted (which in any case only partially survived a motion to dismiss).

Regardless, this case involves the Nevada tort, not an alleged California constitutional violation, and the Court should evaluate the factors laid out by the Nevada Supreme Court in *PETA*. 111 Nev. at 630. None of them suggest a highly offensive intrusion in this case.

***Motive and objective.*** There are no well-pleaded facts that LinkedIn had any intent or motive at all (much less an ulterior one) regarding Plaintiff's Nevada Health Link data. *See supra* Section II.A. Indeed, Plaintiff's own allegations and material cited in her opposition establish that Nevada Health Link and its agent, not LinkedIn, placed the Tag and decided what info it would transmit to LinkedIn. And the Ads Agreement that Plaintiff cites establishes that LinkedIn prohibits advertisers from transmitting health information via the Insight Tag. LinkedIn's lack of motive and objective to intrude on Plaintiff's privacy is "dispositive of this particular element of the tort," and indeed the entire claim. *PETA*, 111 Nev. at 635; MTD at 20–21.

Plaintiff addresses this "dispositive" element in a single sentence, claiming that she has adequately alleged that LinkedIn's motive was "to monetize the [health information] it collected." Opp. at 13 (citing Compl. ¶ 9). Not so. That allegation lacks any support from well-pleaded facts: Plaintiff's complaint is entirely devoid of any allegations that LinkedIn used ***her*** information to create advertising, much less that ***she*** received targeted advertising from LinkedIn based on ***her*** information. Indeed, to the extent the generic allegation is relevant at all (it isn't), it shows why her complaint crosses the boundary into alleging fraudulent misrepresentations and triggering Rule 9(b)'s heightened pleading standard. *L.B.*, 2025 WL 2899514, at *13 n.10. If LinkedIn's motive is to monetize health information collected via the Insight Tag (it isn't), then its admonitions to advertisers in the Ads Agreement to ***not*** collect health information using the Tag must be fraudulent misrepresentations. Plaintiff cannot disclaim that theory in arguing against intent, then assert it here as LinkedIn's "motive" to avoid dismissal of her Nevada claim.

***Expectation of privacy.*** As explained *supra* Section II.D.2, Plaintiff has failed to

plausibly plead a reasonable expectation of privacy.

***Degree of intrusion and conduct.*** The degree of intrusion alleged is minimal. Even assuming Plaintiff's allegations of submitting medication dosage information are plausible, the collection of a small amount of information on a public website provided in response to optional questions is not a high degree of intrusion. MTD at 21. Plaintiff disagrees (again in a single sentence), pointing to an allegation that LinkedIn "manipulated Plaintiff's browser by secretly instructing it to duplicate [communications] with Nevada Health Link and to send those communications to LinkedIn." Opp. at 12–13 (citing Compl. ¶ 28). This allegation is again not well-pleaded; in fact, it contradicts the other materials Plaintiff cites that establish that Nevada Health Link and its agent, not LinkedIn, placed the Insight Tag and thus decided what information would be transmitted to LinkedIn. *See* Compl. ¶ 7 & n.4; Opp. at 3 (citing article in the *Las Vegas Sun* demonstrating the same). LinkedIn is not "manipulating" a browser by making available a commonplace internet technology, which it disclosed to Plaintiff may be used on third-party sites that choose to implement it.

***Context, circumstances, and setting.*** Plaintiff does not dispute that her allegations involve activity on a public website, run by an entity that disclosed that it collects user data, which allegedly occurred using a tool that was also disclosed to Plaintiff. MTD at 21–22. The only additional context Plaintiff claims is relevant is that she disclosed information to "the government." Opp. at 13. But the government actor here, like all other third-party advertisers, chooses whether to use the Tag and which webpages to place it on, and thus controls which pages transmit any information to LinkedIn. If anything, the involvement of a government actor is only relevant because LinkedIn was entitled to presume that Nevada Health Link would act within its own laws and the Ads Agreement when Nevada Health Link (or its agent) implemented the Insight Tag. *See supra* Section II.A (discussing the presumption of regularity).

Plaintiff has failed to plead the elements of the Nevada tort, so the claim must be dismissed.

## III. CONCLUSION

LinkedIn respectfully requests that the Court dismiss this entire action with prejudice.

Dated: February 27, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Benjamin Berkowitz*
BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
SPENCER MCMANUS
LIAM BROWN
FLORA D. MORGAN

Attorneys for Defendant
LINKEDIN CORPORATION